IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES W. JAMES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>LITTON LOAN SERVICING, LP, ET AL.,<br><br>　　　　Defendants.　　　　　　　　　／ | No. C 10-05407 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

In this case, a homeowner facing foreclosure has alleged wrongdoing in connection with a loan modification. Now pending is a motion to dismiss part of the complaint.

**I.　BACKGROUND**

On February 11, 2009, pro se Plaintiff James W. James received a letter from his loan service company, Defendant Litton Loan Servicing, offering him a loan modification. Asdourian Decl. Ex. A (original Complaint) Ex. B (2/11/09 letter). That letter described Plaintiff's "Present Loan Information," stated that the "Servicer Advances" and "Escrow Advances" then due would be waived, and listed "several ways the loan modification program benefits you," including a new interest rate of 4.68% (down from 7.675%) and a "new monthly payment of $2,774.74 (subject to any new escrow analysis)" (down from $4,167.61). Id. The letter also advised Plaintiff, in bold print: "Any uncollected and unbilled advances you owe as of the date of this approval will remain due upon completion of this

modification." Id.

Plaintiff allegedly spoke with someone at Defendant Litton– he "has no recollection of the identity of" the person, SAC ¶ 23– over the next month, id., and "[a]fter much communication . . . Plaintiff agreed to the loan modification strictly on the . . . terms as promised and stated by LITTON in page 2 of Exhibit B," id. ¶ 5 (listing the terms discussed above). Plaintiff alleges that the "above terms were the only terms and conditions agreed upon by Plaintiff and LITTON at the time of the negotiation between LITTON and Plaintiff. At that time, LITTON never mentioned any 'Other Fees Due' nor 'Foreclosure Legal Fees' nor '$2,814.72' nor '$3,422.22.'" Id.

On March 5, 2009, Plaintiff executed a loan modification. Id. ¶¶ 6, 23. That agreement stated that Plaintiff's new yearly rate would be 4.68% (as contemplated by the February 11 letter) and that his monthly payments of principal and interest would be $2,348.69 (a smaller sum that what was in the February 11 letter). Asdourian Decl. Ex. A (original Complaint) Ex. C (loan modification agreement) ¶ 2. It also stated: "The Borrower will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument." Id. ¶ 4. It continued: "Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument." Id. ¶ 5. The Deed of Trust, of which the Court takes judicial notice,[1] states in part: "14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's

---

[1] "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). Nevertheless, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Id. In addition, "it is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss." Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1989) (quoting MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986))

default; for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including but not limited to: attorneys' fees. . . ." RFJN Ex. A ¶ 14.

Plaintiff was alarmed to receive, on May 15, 2009, a bill from Defendants that included "an amount of $2,814.72 as 'OTHER FEES DUE.'" SAC ¶ 23(5). Plaintiff alleges that such a "fee was never mentioned by LITTON during the negotiation period between LITTON and Plaintiff." Id. In response to Plaintiff's inquiries, Defendant Litton "told Plaintiff that this amount was the attorney fees for the foreclosure." Id. ¶ 8. Plaintiff protested that this was not one of the terms of the agreement he had with Defendants, but Defendant Litton "kept ignoring Plaintiff's requests and kept increasing this 'OTHER FEES DUE' every month." Id. ¶ 9. Because Plaintiff "refused to pay LITTON because of its faulty charge of 'OTHER FEES DUE,' LITTON sent to Plaintiff a Notice of Default and Intent to Accelerate on March 19, 2010." Id. ¶ 10.

Plaintiff brought suit against Defendant Litton (and, later, other Defendants) in state court in May 2010. Asdourian Decl. Ex. A (original Complaint). He filed a First Amended Complaint in June 2010. Asdourian Decl. Ex. B (FAC). He filed a Second Amended Complaint in October 2010. Asdourian Decl. Ex. C (SAC). The SAC included causes of action for: (1) Breach of Contract; (2) Actual Fraud and Constructive Fraud; (3) Negligent Infliction of Emotional Distress; (4) Intentional Infliction of Emotional Distress; and (5) Injunctive Relief. Id. The SAC also sought exemplary and punitive damages. Id. at 15. Defendants removed November 2010. See dckt. no. 1. They now move to dismiss the claim for fraud, and move to strike the SAC's request for punitive damages. See dckt. no. 15. Plaintiff filed an Opposition, and a Supplemental Opposition, see dckt. nos. 18, 20, but both focus almost exclusively on two typos in Defendants' papers[2] which Plaintiff argues, somewhat implausibly, so confused him that he "could not possibly ascertain the meaning

---

[2] The first typo: Defendants at one point refer to the SAC's fraud claim as the first cause of action instead of the second. See Mot. at 16. There is no question the Motion related to the fraud claim; the first cause of action was Breach of Contract, which the Motion did not discuss at all. The second typo: the Proposed Order Defendants submitted made reference to defense counsel representing a party named "WMC," when it should have said "the Moving Parties." See dckt. no. 15. The Court is not relying on Defendants' Proposed Order, and so this error is irrelevant.

3

and scheming that Defendants' might have hatched in their mind." Supp. Opp. (dckt. no. 20) at 2.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a cause of action which fails to state a claim upon which relief can be granted. On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Wyler-Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim to relief that is "plausible on its face." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A claim has "facial plausibility" when the pleaded factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In the context of fraud claims, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To comply with Rule 9(b), a plaintiff must plead "with particularity" the time and place of the fraud, the statements made and by whom made, an explanation of why or how such statements were false or misleading when made, and the role of each defendant in the alleged fraud. KEMA, Inc. v. Koperwhats, No. C-09-1587 MMC, 2010 WL 3464737, at *3 (N.D. Cal. Sept. 1, 2010) (citations omitted).

## III. ANALYSIS

### A. Motion to Dismiss Fraud Claims

#### 1. Fraud

The elements of a fraud claim are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. Cisneros v. Instant Capital Funding Grp., 263 F.R.D. 595, 607 (E.D. Cal. 2009). The Complaint's allegations as to intent to defraud and knowledge of falsity consist of the following: "As soon as Plaintiff started his performance on the contract, on or about May 15, 2009, Plaintiff received a billing statement from LITTON. In this statement, LITTON listed an amount of $2,814.72 as

4

'OTHER FEES DUE.'  This fee was never mentioned by LITTON during the negotiation." SAC ¶ 23(5).  These allegations fall short, leaving room for the possibility that such fees were never mentioned by mistake.

Far more problematic, however, is that Plaintiff cannot show justifiable reliance.  His allegations on that point are simply that he sent Defendant Litton a signed loan modification and began making monthly payments.  SAC ¶ 23(4).  This shows reliance on Plaintiff's loan having been modified– and there is no dispute that it was.  But any reliance that there would be no additional fees was not justified.  The loan modification agreement itself stated that "The Borrower will comply with all other . . . requirements of the Security Instrument, including . . . all other payments that the Borrower is obligated to make under the Security Instrument."  Asdourian Decl. Ex. A (original Complaint) Ex. C (loan modification agreement) ¶ 4.  The Deed of Trust says that the "Lender may charge Borrower fees for services performed in connection with Borrower's default," including attorneys' fees.  RFJN Ex. A ¶ 14.[3]  The SAC recounts Defendant explaining to Plaintiff that the fee about which he complained was "the attorney fees for the foreclosure."  SAC ¶ 8.  He does not argue that the fees were not for attorneys' fees; just that "attorney fees was not in the terms of the agreement."  Id. ¶ 9.  He is incorrect.  Though the Court might find it unseemly to require cash-strapped borrowers to pay the lender's attorneys' fees in connection with default, the papers here say that Defendants can do so.

Further, if Plaintiff is in fact intending to claim that he was fraudulently induced to enter into the loan modification,[4] that claim also fails.  Plaintiff has not alleged how

---

[3] Moreover, the February 11, 2009 letter warned that "any uncollected and unbilled advances you owe . . . will remain due upon completion of this modification."  Asdourian Decl. Ex. A (original Complaint) Ex. B (2/11/09 letter).

[4] The elements for such claim are (1) a misrepresentation; (2) knowledge of the falsity of the representation; (3) intent to induce reliance; (4) justifiable reliance; and (5) damage.  Stewart v. Ragland, 934 F.2d 1033, 1043 (9th Cir. 1991).  These elements must be pleaded in accordance with the pleading standards for fraud claims under Federal Rule 9(b).  Plaintiff has not met those standards because he does not plead the misrepresentation with particularity or how that misrepresentation induced justifiable reliance in light of the plain terms of the agreement.

5

1 Defendant Litton failed to act in good faith with respect to enforcing the terms of the deal he
2 actually had rather than the one he thought he was getting or wanted.

3 Accordingly, Plaintiff has failed to state a claim for fraud; this claim is dismissed with
4 prejudice.

### 2. Constructive Fraud

6 The Complaint also includes a claim of constructive fraud based on Cal. Civil Code
7 section 1573. The elements of constructive fraud are: (1) a fiduciary relationship; (2)
8 nondisclosure; (3) intent to deceive; and (4) reliance and resulting injury. Younan v.
9 Equifax, 111 Cal. App. 3d 498, 517 n.14 (1980). Plaintiff has failed to allege a fiduciary
10 relationship (asserting that Defendants "breached their duty of good faith and fair dealing").
11 See SAC ¶ 24. More importantly, no fiduciary relationship exists between Plaintiff and the
12 Defendants. See Shepherd v. Am. Home Mortgage Svs. Inc., No. 2:09-1916 WBS GGH
13 2009 WL 4505925, at *2 (E.D. Cal. Nov. 20, 2009) (as to loan servicers); Kim v. Sumitomo
14 Bank, 17 Cal. App. 4th 974, 979 (1993) (as to banks).

15 Accordingly, Plaintiff has failed to state a claim for constructive fraud; this claim is
16 also dismissed with prejudice.

### B. Motion to Strike

18 Finally, Defendants move to strike the punitive damage allegation under Fed. R. Civ.
19 P. 12(f). Under that Rule, a Court may strike from a pleading any "redundant, immaterial,
20 impertinent, or scandalous matter." In Rosales v. Citibank Fed. Sav. Bank, 133 F. Supp. 2d
21 1177, 1180 (N.D. Cal. 2001), the district court recounted the Ninth Circuit's longstanding
22 disdain for strike motions "because they are often used as delaying tactics and because of the
23 limited importance of pleadings in federal practice." Even Defendants concede that punitive
24 damages are sometimes available for negligent infliction of emotional distress and intentional
25 infliction of emotional distress claims. See Mot. at 14-15. The Court does not find that the
26 request for punitive damages here rises to the level of immateriality or impertinence. The
27 Motion to Strike is denied.

28 //

6

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss and DENIES the Motion to Strike.

**IT IS SO ORDERED.**

Dated: February 22, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE